<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**LYNCH FINANCIAL GROUP OF NJ, LLC, *et al.*,**

          Plaintiffs,

          v.

**KANSAS CITY LIFE INSURANCE COMPANY, *et al*.,**

          Defendants.

Civil Action No. 23-18816 (ZNQ) (RLS)

**OPINION**

---

<u>QURAISHI, District Judge</u>

    **THIS MATTER** comes before the Court upon a Motion to Remand (the "Motion," ECF No. 16) filed by Plaintiffs Lynch Financial Group of NJ, LLC ("LFG") and Peter Lynch ("Lynch") (collectively, "Plaintiffs"). Plaintiffs' Motion comes in response to Defendant Kansas City Life Insurance Company's ("KCLI") filing of a Notice of Removal from the Superior Court of New Jersey. ("Notice of Removal," ECF No. 1.) Plaintiffs filed a brief in support of their Motion. ("Moving Br.," ECF No. 16-1.) KCLI filed an opposition ("Opp'n Br.," ECF No. 22), to which Plaintiffs replied ("Reply Br.," ECF No. 27). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **GRANT** Plaintiffs' Motion to Remand.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## I.     BACKGROUND AND PROCEDURAL HISTORY

This action arises out of a series of agreements between the parties—most notably, the General Agency Contract ("GAC") between Plaintiff Lynch and Defendant KCLI, pursuant to which KCLI paid Lynch to act as its "general agent." ("Compl.," ECF No. 1 ¶¶ 49–50.)  According to the Complaint, the relevant events commenced when Defendant Thomas Vanlaarhoven ("Vanlaarhoven"), who was a client of Plaintiffs' (Lynch and Lynch's financial planning and accounting business, LFG), decided that he wanted to sell his agency, Morgan 24/7 Financial Services, LLC ("Morgan 24/7").  (*Id.* ¶¶ 19, 22–24.)  Vanlaarhoven enlisted Plaintiffs' help in doing so, which worked alongside KCLI[2] to negotiate with several prospective buyers, including Defendants Eric Rosenthal ("Rosenthal") and Randall Warren[3] ("Warren").  (*Id.* ¶¶ 21, 25.)  When a deal with Warren proved unsuccessful, KCLI and Morgan[4] pressured Vanlaarhoven to sell.  (*Id.* ¶¶ 26–27.)  Ultimately, Vanlaarhoven sold Morgan 24/7 to Plaintiffs via an Interest and Rights Purchase Agreement (the "Purchase Agreement"), which was executed between Morgan 24/7 and Vanlaarhoven on or around October 15, 2020.  (*Id.* ¶ 39.)  Under the terms of the Purchase Agreement, LFG purchased for $250,000 the good will, accounts, and any interest in Morgan 24/7's pre-existing General Agency Contract with KCLI (the "Morgan 24/7-KCLI GAC"), and assumed Morgan 24/7's rights—but not its obligations—under the Morgan 24/7-KCLI GAC.  (*Id.* ¶¶ 39, 44, 48.)

On or around September 21, 2020, Lynch entered into his own GAC directly with KCLI. (*Id.* ¶ 49.)  Pursuant to that GAC, Lynch, acting as KCLI's general agent, agreed to "solicit life

---

[2] For the twelve years prior, Plaintiffs had a "fruitful and successful relationship" with KCLI, and sold KCLI's life insurance policies and annuities to Plaintiffs' clients.  (Compl. ¶¶ 21, 31.)

[3] While Defendants argue that the Complaint incorrectly identifies Defendant Randolph Warren as "Randall Warren," (Opp'n Br. at 1), Plaintiffs maintain that Mr. Warren self-identifies as "Randall Warren."  (Reply Br. at 1 n.1.)

[4] According to the Complaint, Defendant Morgan holds "some sort of an 'unwritten' interest" in Morgan 24/7.  (*Id.* ¶ 4.)

insurance applications and annuity contracts, deliver policies, receive and send checks, recruit, recommend, train, and supervise subagents, and advertise with the consent of KCLI." (*Id.* ¶ 50.) Plaintiffs expended significant time, money, and resources to perform under the GAC, (*Id.* ¶¶ 59–63), after which time Defendants allegedly engaged in a "concerted effort" to misappropriate and "fraudulently deprive Plaintiffs of their funds, time, work product, and leads,"[5] resulting in KCLI "quickly fabricat[ing] a reason" to terminate the GAC and opting instead to transfer Morgan 24/7 to a different, "preferred" buyer. (*Id.* ¶¶ 1–3, 121–23.)

On July 25, 2023, Plaintiffs, both citizens of New Jersey, filed this lawsuit in state court against residents of New Jersey Warren and Hagop Bakhtiarian ("Bakhtiarian"), as well as the following defendants that are citizens of other states: KCLI, Morgan 24/7, Vanlaarhoven, Rosenthal, Thomas Morgan ("Morgan"), and Robert Petzold ("Petzold"). (*Id.* ¶¶ 6–16; *see also* Notice of Removal.)   The Complaint asserts twelve causes of action against the various Defendants: breach of contract against KCLI (Count One); negligent misrepresentation against KCLI, Vanlaarhoven, Petzold, and Morgan (Count Two); fraud against KCLI, Vanlaarhoven, Morgan, and Petzold (Count Three); conspiracy to commit fraud against all Defendants (Count Four); breach of fiduciary duty against Petzold, Morgan, and Bakhtiarian (Count Five); conversion against KCLI and Rosenthal (Count Six); unjust enrichment against KCLI, Rosenthal, and Bakhtiarian (Count Seven); unconscionable business practices against KCLI (Count Eight); unlawful termination of franchise against KCLI (Count Nine); violations of the New Jersey

---

[5] The Complaint alleges that KCLI conspired with Bakhtiarian and other Defendants "to [u]ndermine the GAC" by, *inter alia*, Defendant Bakhtiarian, Plaintiffs' top-performing employee, learning the Purchase Agreement terms and related calculations from Petzold and subsequently blackmailing Plaintiffs into paying him more money, (Compl. ¶¶ 68–73); Defendant Petzold stepping down from his role with Plaintiffs despite the company's highest level of success in history, leaving Plaintiffs without a regional manager for four months, (*id.* ¶¶ 81–87); Defendant Morgan demanding that Plaintiffs transfer Morgan 24/7 to Rosenthal's agency, (*id.* ¶¶ 90, 95); Defendants Morgan and Warren—as representatives of KCLI—entering the Morgan 24/7 office, which remained "effectively untouched" and unused per the GAC, unannounced and without authorization, (*id.* ¶¶ 97–115.)

Racketeer Influenced and Corrupt Organizations Act ("RICO") against all Defendants (Count Ten); conspiracy in violation of New Jersey's RICO statute against KCLI, Petzold, Morgan, Warren, Rosenthal, and Bakhtiarian (Count Eleven); and punitive damages against all Defendants (Count Twelve).  Defendants timely removed the case under 28 U.S.C. § 1441 to this Court, arguing fraudulent joinder of Defendants Warren and Bakhtiarian and invoking diversity jurisdiction.  (*See* Notice of Removal.)  Plaintiffs thereafter filed the instant Motion seeking remand back to New Jersey state court.

## II.   LEGAL STANDARDS

### A.  Motion to Remand

Federal district courts have original diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states.  28 U.S.C. § 1332(a).  Party joinder is permissible when a claim "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences," and involves "any question of law or fact common to all defendants."  Fed. R. Civ. P. 20(a).  The right to remove a civil action from state court is retained by a defendant if the case could have been originally brought in federal court, such as through diversity jurisdiction.  28 U.S.C. § 1441(b).

Section 1447(c) states that a case removed from state court shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  When determining if an action should be remanded, a district court must focus on the operative complaint at the time the petition for removal was filed.  *See Stephens v. Gentilello*, 853 F. Supp. 2d 462, 465–66 (D.N.J. 2012).  If a complaint raises no question of federal law, a district court may exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and complete diversity exists among the adverse parties.  28 U.S.C.

§ 1332(a); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 83–84 (2005).  As the party removing the case, the defendant bears the "burden to prove that federal court jurisdiction is proper at all stages of the litigation."  *Stephens*, 853 F. Supp. 2d at 465 (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).  Any contested issues of fact and uncertainties of law must be resolved in favor of the plaintiff.  *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991).  Further, the Court is tasked with construing removal statutes strictly so as to "resolve all doubts in favor of remand."  *Stephens*, 853 F. Supp. 2d at 466 (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)).

### B. Fraudulent Joinder

The doctrine of fraudulent joinder provides an exception to the requirement that removal be established entirely upon complete diversity.  *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006).  If there is no separate federal question jurisdiction, the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.  *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).  Given that the removing party imposes jurisdiction upon a federal court, it must meet a "heavy burden of persuasion" to establish fraudulent joinder.  *Id.* (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987), *cert. dismissed*, 484 U.S. 1021 (1988)); *see also Boyer*, 913 F.2d at 111.  As such, joinder may only be found fraudulent "when there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against defendants or seek a joint judgment."  *Batoff*, 977 F.2d at 851 (quoting *Boyer*, 913 F.2d at 111) (internal quotation marks omitted).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the

resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (quoting *Boyer*, 913 F.2d at 111) (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Subject Matter Jurisdiction

Plaintiffs argue that removal to this court was improper and, as a result, remand is required. (Moving Br. at 1.)  Specifically, Plaintiffs assert that this action was non-removable when initially filed due to a lack of complete diversity of citizenship.  (*Id.*)  Neither party argues that the Court has federal question jurisdiction.  Given that Plaintiffs and Defendants Warren and Bakhtiarian are citizens of the State of New Jersey, the Complaint does not plead complete diversity on its face. (*Id.* ¶¶ 6–7, 12–13.)  Instead, Defendants argue that Warren and Bakhtiarian were fraudulently joined to defeat diversity jurisdiction and thus that their citizenship should be ignored.  (Notice of Removal ¶¶ 23–33.)

### B.  Fraudulent Joinder Analysis

Plaintiffs argue that Defendants have not met their heavy burden to show fraudulent joinder. (Moving Br. at 9–11.)  Plaintiffs first assert that, despite the "misleading" legal framework put forth by Defendants, the central issue is whether Plaintiffs have colorable claims against Warren and Bakhtiarian[6]—which Plaintiffs submit they do.  (*Id.* at 10–11.)  According to Plaintiffs, Defendants mischaracterize the Complaint's allegations against Warren by claiming that Warren plays only a "minimal role" in the events that transpired.  (*Id.* at 11–12.)  Plaintiffs insist that the Complaint alleges in good faith and with a factual basis that on more than one occasion, both before and long after the sale of Morgan 24/7 to Plaintiffs, Warren maliciously conspired with other Defendants to cause harm to Plaintiffs.  (*Id.* at 12–13.)  With respect to Bakhtiarian,

---

[6] Plaintiffs correctly add that whether the colorable claims against Warren and Bakhtiarian will ultimately succeed is an issue expressly irrelevant to the Court's consideration at this time.  (Moving Br. at 13.)

Plaintiffs similarly maintain that Defendants mischaracterize his role as "attenuated," as the more than twenty discrete allegations in the Complaint concerning Bakhtiarian show his involvement in the alleged organization-wide conspiracy.  (*Id.* at 13–14.)  As a top-performing employee of Plaintiffs—*not* of KCLI—Plaintiffs emphasize that Bakhtiarian's actions were "fundamentally intertwined" with the rest of the conspiracy accusations described in the Complaint, including Bakhtiarian's numerous demands of KCLI and Lynch and secret meetings with Petzold and Morgan.  (*Id.* at 14.)  Lastly, Plaintiffs walk through the elements of each claim that Warren and Bakhtiarian face, and argue how each one presents a colorable cause of action against them.[7]  (*Id.* at 15–17.)

Defendants insist that Plaintiffs joined Warren and Bakhtiarian for the sole purpose of destroying diversity jurisdiction.[8]  (Opp'n Br. at 1–2, 23.)  Defendants argue that because Warren and Bakhtiarian had a tenuous relationship at best to the "gravamen" of the Complaint—the purported wrongful termination by KCLI of the GAC, to which they were not parties—Plaintiffs had no factual or legal basis to join them in this action.[9]  (*Id.* at 1–3, 13–14 (calling Warren and Bakhtiarian "mere witnesses[10] to key events"), 25–27.)  Additionally, Defendants argue that the allegations against Warren and Bakhtiarian are "wholly insubstantial" and "fail as a matter of law" with respect to each relevant claim.  (*Id.* at 14–24 (reviewing each count against Warren and Bakhtiarian).)  For instance, Defendants state that Plaintiffs cannot maintain their conspiracy to commit fraud claims against Warren or Bakhtiarian because, among other reasons, the Complaint

---

[7] Plaintiffs emphasize that the claims against Warren and Bakhtiarian are not breach of contract claims, nor are they "grounded in" such claims, and that to conclude otherwise would be to engage in a selective reading of the Complaint. (Reply Br. at 4–5.)

[8] Plaintiffs counter that this is a subjective and untrue belief held by Defendants.  (Reply Br. at 1, 4.)

[9] Separately, Defendants argue: (1) that an alleged breach of contract cannot form the basis of several other claims in the Complaint, including Counts Four and Ten, (Opp'n Br. at 17–20), and (2) that there was no unlawful termination of the GAC because "as a matter of law, the GAC was terminable at will by either party 'with or without cause.'"  (*Id.* at 25.)

[10] Plaintiffs extensively refute this characterization of both Warren and Bakhtiarian.  (Reply Br. at 8–12.)

does not allege that their actions were conspiratorial, "nor could they be under the law."[11]  (*Id.* at 16–18.)

For the reasons set forth below, the Court concludes that Defendants have failed to establish fraudulent joinder under the stringent standard imposed with respect to Plaintiffs' conspiracy to commit fraud claim against Warren and Bakhtiarian (Count Four).

To determine whether Warren and Bakhtiarian were fraudulently joined, the Court must determine whether Plaintiffs have a reasonable basis in fact or colorable ground to support a claim against those Defendants.  *See Boyer*, 913 F.2d at 111.  A civil conspiracy, such as one to commit fraud under New Jersey law, occurs when "two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."[12]  *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005).

The Complaint contains not only big-picture allegations that Defendants, or "multiple parties," conspired to sell Morgan 24/7 to Plaintiffs and then, after allowing Plaintiffs to expend significant time and capital while performing under the GAC, fraudulently deprive Plaintiffs of same, (Compl. ¶¶ 1–5, 124–48), but also several detailed allegations illustrating the particular involvement of Warren, (*see, e.g.*, *id.* ¶¶ 29, 70, 109, 110, 112, 114, 116), and of Bakhtiarian, (*see, e.g.*, *id.* ¶¶ 47–48, 68–70, 72–77, 89–92, 95, 134).

---

[11] Plaintiffs repeatedly emphasize in their Reply Brief that it is inappropriate at this stage of the litigation to make merit-based arguments, as Defendants attempt to do.  (*See generally* Reply Br.)

[12] Plaintiffs and Defendants provide the Court with case law that recites only the elements of common law fraud, not the elements required for a claim of conspiracy.  Separately, the Court notes that the cases they do cite apply New Jersey law, so the Court will apply New Jersey law herein but makes no finding as to which law will ultimately apply should the case be later resolved on the merits.

The detail with which the Complaint highlights the actions that Warren and Bakhtiarian undertook as part of the alleged organization-wide conspiracy[13] makes this case readily distinguishable from others in which the Court has found fraudulent joinder. For example, in *Masselli v. Total Luxury Grp., Inc.*, Civ. No. 8-1845, 2008 WL 4126556, at *2–3 (D.N.J. Aug. 29, 2008),[14] the Court found fraudulent joinder of a defendant, Mr. Berkman, of whom "the only reference whatsoever . . . throughout the Complaint [wa]s the erroneous claim that he 'is and was at all relevant times an officer and/or director of [Total Luxury Group].'" *Id.*; *see also Hannah v. Johnson & Johnson, Inc.*, Civ. No. 18-1422, 2020 WL 3497010, at *14 (D.N.J. June 29, 2020) (finding fraudulent joinder where the complaint had a "complete lack of allegations, let alone specific ones," against the joined defendants).

Moreover, "when courts in this district have found fraudulent joinder, they have nearly always done so because the claim was based on a legal impossibility, such as statute of limitations, the absolute litigation privilege, or ripeness." *Curley v. Mercury Ins. Servs., LLC*, Civ. No. 21-12259, 2022 WL 445633, at *3 (D.N.J. Feb. 10, 2022); *McBurnie v .CRC Ins. Servs., Inc.*, Civ. No. 19-20018, 2020 WL 1329917, at *4 (D.N.J. Mar. 23, 2020) ("Courts in this district have

---

[13] As Plaintiffs point out, the causes of action in this case are far more expansive than the Complaint's single count for breach of contract (Count One), which is not even brought against Warren or Bakhtiarian. The Court therefore rejects Defendants' argument that this case is grounded in breach of contract, and finds that it is inappropriate to limit the other causes of action against Warren and Bakhtiarian on that basis. Notably, the cases cited by Defendants on this point are cases in which breach of contract is indeed the sole focus of the complaint, unlike here where the Complaint brings eleven other causes of action in addition to breach of contract, three of which involve RICO or conspiracy claims. *See Masselli v. Total Luxury Grp., Inc.*, Civ. No. 8-1845, 2008 WL 4126556, at *1 (D.N.J. Aug. 29, 2008) (four breach of contract claims only); *Gil v. Related Mgmt. Co.*, Civ. No. 6-2174, 2006 WL 2358574, at *1 (D.N.J. Aug. 14, 2006) (two breach of contract claims and one related breach of the implied covenant of good faith and fair dealing only); *Curtiss-Wright Corp. v. CNA Fin. Corp.*, Civ. No. 11-4416, 2012 WL 1044493, at *1 (D.N.J. Jan. 26, 2012) (breach of contract and declaratory judgment claims only).

[14] Other cases cited by Defendants, including *McKenna v. Verint Ams. Inc.*, Civ. No. 22-2370, 2022 WL 3211422, at *6 (D.N.J. Aug. 9, 2022), and *Cox v. Johnson & Johnson*, Civ. No. 20-6779, 2021 WL 4490456, at *5 (D.N.J. Oct. 1, 2021), are equally unavailing. In *McKenna*, claims against the fraudulently joined defendant were deemed conclusory because the complaint lacked any "specific measures" taken by the defendant beyond broad allegations that he "conspired with" another defendant. *McKenna*, 2022 WL 3211422, at *6. In *Cox*, the Court found fraudulent joinder because "no colorable legal ground" supported a novel theory of liability put forth by the plaintiffs, and the plaintiffs failed to supply any case law in support of their argument. *Cox*, 2021 WL 4490456, at *5.

similarly found fraudulent joinder when the plaintiff's claims were impossible because the non-diverse defendant did not possess the proper identity or status to be sued under the state statute."). Defendants make no comparable arguments here.  As Plaintiffs point out, Defendants instead attack the merits of Plaintiffs' claims, misconstruing the fraudulent joinder analysis for one appropriate under a motion to dismiss or motion for summary judgment.  (*See generally* Opp'n Br. (citing numerous cases that were decided at various other stages of litigation which do not address fraudulent joinder).)  As the Third Circuit has made clear, the two analyses are distinctly different:

> [T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.

*Batoff*, 977 F.2d at 852; *see also McDermott v. CareAllies, Inc.*, 503 F. Supp. 3d 225, 237 (D.N.J. 2020) (observing in the context of a motion to remand based on fraudulent joinder that "the benchmark here is considerably lower than that triggered by Rule 12(b)(6).").  For the reasons stated above, the Complaint's conspiracy allegations against Warren and Bakhtiarian in Count Four are indeed colorable.

Given that Plaintiffs' Complaint contains at least one colorable claim against Warren and Bakhtiarian, the Court finds that Defendants' fraudulent joinder argument fails.  Accordingly, the Court concludes that Defendants Warren and Bakhtiarian were properly joined and that this action must be remanded to state court for lack of subject matter jurisdiction.[15]

---

[15] Because the Court finds that Warren and Bakhtiarian were properly joined with respect to to one count of the Complaint, Count Four, it need not analyze the others.  *Victorin v. Jones Lang LaSalle*, Civ. No. 20-18123, 2021 WL 651200, at \*2 (D.N.J. Feb. 18, 2021) ("The plaintiff need only show that it has one colorable claim against a non-diverse defendant.") (citing, among other cases, *Batoff*, 977 F.2d at 851).

### C.  Costs and Attorney's Fees

Plaintiff argues that attorney fees should be awarded on remand because removal by Defendants was baseless and "for improper purposes."  (Moving Br. at 18.)  The Supreme Court has explained that under Section 1447(c) an award of attorney fees resulting from a remand is discretionary upon the district court's judgment.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005).  In *Martin*, the Court explained that "the statutory language and context strike us as more evenly balanced between a pro-award and anti-award position."  *Id.* at 138.  This is not to say that such a decision is made on a whim.  *Id.*  A district court is to be guided by the principles of preservation of judicial resources as the process of removal may "impose[] additional costs on both parties, and waste[] judicial resources."  *Id.* at 140.  As such, a district court undertakes a reasonableness analysis in which, "absent unusual circumstances, courts may award attorney's fees . . . only where the removing party lacked an objectively reasonable basis for seeking removal."  *Id.* at 141.

Here, the Court finds that Defendants set out an objectively reasonable basis for removal based upon their belief that Warren and Bakhtiarian were fraudulently joined, despite the Court's disagreement with their position.  (Notice of Removal ¶¶ 23–33.)  Nor does the Court find evidence of bad faith in Defendants' removal.  (Opp'n Br. at 29.)  As such, the Court will deny Plaintiffs' request for attorney's fees.

### IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court rejects Defendants' argument that the joinder of Warren and Bakhtiarian was fraudulent and should be ignored for the purposes of determining whether diversity jurisdiction exists.  The Court will **GRANT** Plaintiffs' Motion to Remand,

**DENY** Plaintiffs' request for leave to seek attorney's fees, and remand this matter to the Superior

Court of New Jersey, Monmouth County.

Date: **April 29, 2024**

s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**